Cited in Martin v. Martin, 4 Hal. Ch. 569.

---

## THE ADMINISTRATOR OF EDWARD S. BELL v. JOHN H. HALL AND HENRY B. STOLL.

A and B, partners, dissolved partnership, and by the articles of dissolution A took the property of the partnership, and agreed to pay the debts of the partnership, and to relieve B therefrom, and to pay B the balance due him of the capital invested by him, and the further sum of $1600 for his share of the stock and profits of the partnership. After the dissolution, a creditor of the partnership obtained a judgment against A and B for a debt of the firm, for $607.91, and issued execution thereon, which was levied on the personal and real estate of both A and B. A's personal property so levied on, consisting of store goods and other personal property, was afterwards assigned to C, the father-in-law of A. A afterwards sold to D the stock of goods he then had on hand, and C thereupon, by writing under seal, released to D all his interest in the goods under and by virtue of the said execution, with full knowledge of the terms of the dissolution. Held that the judgment could not be enforced against B.

The facts of this case sufficiently appear in the opinion of the Chancellor.

C. S. Leport and F. T. Frelinghuysen, for the complainant. They cited Montague on Part. 204 ; 17 John. Rep.

384; 13 *Ibid.* 174; 7 *Ibid.* 336; 10 *Wend.* 162; 1 *M'Cord' Ch.* 443; 1 *Story's Eq.*, § 325, 326, 449, 499; 4 *Harr. Rep.* 167.

*W. S. Johnson* and *D. Haines*, for the defendants. They cited *Theobald on Principal and Surety* 239, 240; 1 *Law Lib.* 84, 135, 142, 143; 2 *Swanst.* 185; 4 *Vesey* 824; 1 *Story's Eq.*, §§ 163, 676; 8 *Wheat.* 212; 1 *Peters* 16; 6 *Hals.* 224; 2 *South.* 584.

THE CHANCELLOR. On the 16th March, 1840, Henry B. Stoll and Edward S. Bell entered into partnership as merchants in Stanhope, under the partnership name of Stoll & Bell, each furnishing an equal amount of capital. They purchased a stock of goods on the same day, from Andrew A. Smalley, for the purposes of their partnership, amounting to $3750, for which they gave Smalley their notes, in different sums, payable at different periods.

On the 11th March, 1841, the partnership was dissolved by mutual consent, by agreement in writing and under seal. By this agreement, Stoll took the stock of goods and merchandise then on hand belonging to the partnership, and all the books of account, notes, bonds, moneys and effects of the partnership, and all debts due the partnership, Bell relinquishing all claim thereto; and Stoll agreed to pay all the debts of the partnership, and to relieve Bell therefrom, and to pay Bell the balance due him of the capital invested by him, and the further sum of $1600, for his share of the stock and profits of the partnership. One of the notes from Stoll & Bell to Smalley passed into the hands of Coursen & Woodruff, of New York; it was for $583.91. On the 23d May, 1843, Coursen & Woodruff recovered judgment on this note against Stoll & Bell, in the Circuit Court of Sussex, for $607.91 damages, and $36.41 costs, and thereupon issued execution, returnable to the term of August, 1843, of that court, which was put into the hands of the sheriff on the 26th May, 1843. By virtue of this writ, the sheriff levied on the personal and real estate of both Stoll & Bell. The property of Stoll levied on consisted of store

goods, household furniture, a pair of horses, &c., and also a house and lot in which Stoll lived.

The under sheriff says this levy was made about the 1st of June, 1843 ; and that, after he had received the execution, he called on Bell, and Bell told him it was a debt of the firm, and to be paid by Stoll ; that he then called on Stoll and informed him of the execution, and asked him if it was his debt to pay, and he said it was ; that, in consequence of this, he took a more full and particular levy of the property of Stoll than that of Bell. In the latter part of August, 1843, the deputy sheriff advertised the said estate of both the defendants in the said execution by hand-bills. The under sheriff further says that, before the time arrived for advertising in the papers, he received notice that the judgment had been assigned to John H. Hall. He thinks Hall showed him the assignment; and his impression is, that it was in consequence of directions from Hall that he did not put advertisements in the papers. He believes he had a written stay from Hall. He says he was called on several times by Bell, and urged by him to proceed with the execution ; that he uniformly told Bell he was under the direction of Hall in relation to the matter, and could not go on without his instructions.

The judgment was assigned by Coursen & Woodruff to Hall in September, 1843; the assignment bears date September 20th, 1843 ; the receipt of E. W. Whelpley, the attorney of Coursen & Woodruff, is dated September 25th, 1843 ; it is for John H. Hall's note for $548.22, at six months, endorsed by John Bell, on account of assignment of Coursen & Woodruff's judgment against Stoll & Bell.

Coursen says the assignment was made to Hall at the urgent request of Stoll. It seems to have been executed on the 20th, and sent out by Coursen & Woodruff to their attorney.

The answer says that, on or about September 1st, 1843, Stoll paid $125 to Coursen & Woodruff on their execution.

Hall admits that the Coursen & Woodruff judgment against Stoll & Bell was for their joint debt, and that it was so understood by him at the time he became the owner of it. He admits he stayed the execution till his further order, and says that, at the time of the assignment to him of the judgment of Coursen

& Woodruff he had no knowledge or intimation of any agreement or understanding between Stoll & Bell that Stoll was to pay the debts of the firm, as alleged in the bill; that he has never seen any such agreement or understanding, and had no knowledge of any till some time after the assignment and stay of execution, when it was alleged by Bell that Stoll was bound to pay all the debts of the firm. He admits that Robert P. Stoll, about the 1st of October, 1843, called on him and stated to him that Bell wished the money due on the Coursen & Woodruff execution to be raised out of the property of Stoll only, or words to that effect; but says that Robert did not represent himself as the agent of Bell, or that he came at his request.

About the 20th November, 1843, H. B. Stoll agreed to sell to Smalley the stock of goods he then had, at $1300; and three notes were drawn for the consideration money; but, before the notes were delivered, Smalley told Stoll he wanted to be satisfied that there was no encumbrance on the goods. Smalley testifies that Stoll told him there was no encumbrance on the goods, and wished him to give him the notes. That, soon after this, he, Smalley, ascertained that a judgment had been obtained by Coursen & Woodruff against Stoll & Bell, and that execution had been issued thereon, and levied on Stoll's store goods; and that the judgment had been assigned to Hall.

On the 25th November, 1843, Hall, by writing under seal, released to Smalley all his right to the goods under and by virtue of the said execution. Smalley says that, in the course of the negotiation between him and Stoll, Stoll told him that Hall was to have the notes, or a part of them; that Stoll married a daughter of Hall, and his wife is living.

On the 24th November, 1843, Stoll conveyed to Hall his real estate. It was subject to mortgages. On the 2d December, 1843, Hall gave his note to Andrew Shiner for $711, at fifteen months, with interest, for a debt of Stoll's. On the same day, Stoll gave his note to Hall for $711, at fifteen months, with interest, stating in the body of it, that it was for value received by the note of Hall that day given to the order of A. Shiner, for his, Stoll's, debt. Hall gave his receipt, of the date of December 13th, 1843, acknowledging the receipt from Stoll of two notes of Smalley, dated November 20th, 1843, for $433.33

each, payable, one in twelve and the other in twenty-four months from date, stating that, out of the proceeds, when collected, he is to deduct the amount that may then be due on Stoll's note to him of 2d December, 1843, for $711, at fifteen months, with interest, and pay Stoll the balance.  On the face of this receipt is written, "Settled by the note of $711, and endorsing $88.16 on note of 20th June, 1844," being a note of this date, for $250, on demand, with interest, given by Stoll to Hall.

On the face of the note from Stoll to Hall, of December 2d, 1843, for $711, is written, "Paid 20th November, 1844, passing two of the Smalley notes to Coursen & Co., and taking up my note for which this was given."

It seems that the note for $711, given by Hall to Shiner, was to satisfy a ca. sa., which Shiner, as sheriff, had against H. B. Stoll and R. P. Stoll, in favor of Coursen & Co., on which H. B. Stoll had been arrested.

The foregoing facts seem to be undisputed.  It is further alleged, in the bill, that Hall had notice of the terms of the agreement of dissolution before he received the assignment of the judgment of Courson & Woodruff.

Hall's answer to this charge is not so clear and satisfactory as it might have been, and there is some very persuasive evidence that he might have had such notice before he received the assignment, but I do not think it necessary to determine how this is.  There can be no doubt, from Hall's answer, and the proofs in the case, that before he released to Smalley his right to the goods, by virtue of the execution, he knew that Stoll, by the agreement of dissolution, was to pay the debts of the firm of Stoll & Bell, and there is evidence quite satisfactory to my mind, that he had been urged by Bell to proceed to a sale on the execution.

If Hall, before he received the assignment of the judgment and execution, knew that Stoll was to pay the debts of the firm, then the acts of Hall, which followed the assignment, are, it seems to me, very strong to show a design in Hall, in taking the assignment, to aid Stoll in withdrawing his property that had been levied on from the lien of the execution, and compeling the sheriff to make the debt out of the property of Bell.

The resort to such a measure, and the urgency of Stoll to have the judgment assigned to Hall, show that, in all probability, if Coursen & Woodruff had retained the judgment and execution, they would have made the debt out of Stoll's property, and this probability is greatly strengthened by the testimony of under-sheriff M'Carter. Stoll had told him it was his debt to pay, and he had, in consequence thereof, taken a fuller and more particular levy on the property of Stoll than on that of Bell, and had levied on property of Stoll amply sufficient to pay the whole debt.

I am very much inclined to think that if Stoll could have influenced Coursen & Woodruff to take the same course that Hall took after he received the assignment, i. e., relieve his goods and drive the sheriff on the property of Bell, no assignment would have been urged or made.

If I thought the case required me to go so far, in order to relieve the complainant, I should find it very difficult to avoid the conclusion that, at least as early as when he gave his note to Mr. Whelpley, the attorney of Coursen & Woodruff, for the assignment, Hall was sufficiently apprised of the terms of the dissolution, and of the object of Stoll's agency and urgency in having the assignment made. If he was, then he lent himself to aid Stoll in the design of relieving his property from an execution debt which, as between him and Bell, he was bound to pay, and of throwing the debt upon Bell. This would not be countenanced in equity. But, as I have said before, I do not think it necessary to go so far. It is clear that, before Hall gave the release to Smalley, he knew that, by the terms of the dissolution, Stoll was to pay this debt, and, on being asked to give the release, he could not fail, with his knowledge of the course things had taken, to perceive that he was asked to do a positive act which would give effect to all the preceding steps in the transaction, and to perceive what must have been Stoll's design from the beginning. His giving the release, under such circumstances, must be considered as an adoption, with full knowledge, of Stoll's aim and object, and a positive agency in accomplishing them. If Hall had, before, but indistinct glimmerings of the design, not amounting to knowledge or information, it was now fully revealed to him, and, if he might have re-

mained passive, and permitted the sheriff to take his own course on the execution, and make the money where he pleased, or if the sheriff threatened to sell Bell's property first, might have stood still and left Bell to his application to this court, I cannot think he was at liberty to do a positive act injurious to Bell, by releasing the goods and thereby rendering it impossible either for the sheriff to sell them to raise the debt, or for Bell to take any measures to that end.

It appears to me that a regard for the doctrines of this court, and a purpose to give them their due influence and control over the transactions of men, require me to say that Hall should not have released the goods without stipulating for the payment of his judgment and execution out of the proceeds of the sale to Smalley.

I do not think it necessary to order a reference to ascertain how much, in amount, of Stoll's goods that were levied on, remained in the store at the time of the sale of the stock to Smalley. It would be a very difficult inquiry, and it is not likely that any more satisfactory evidence could be produced on this part of the subject than is now before the court; and I am inclined to think from the testimony that the sheriff could have made, from his levy on the goods of Stoll, enough to pay the balance due on the execution.

Again, it appears to me that the release, with the full knowledge Hall had at the time it was made, was such an adoption of all the preceding acts tending to the same end, that he should be held responsible for the effects of the stay of execution, even if it be doubtful whether he had sufficient knowledge before the stay to charge him with its effects.

I am of opinion that Bell and his property are relieved from the judgment.

Decree accordingly.